UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 12 C 9176 |
| HAL DURHAM, | ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In October 2008, the grand jury returned a three-count indictment against Petitioner Hal Durham and his five co-defendants (Tony Callion, Israel Collins, Daniel Gibbs, Natalie Hoisington, and Sherman Swopes). In October 2009, a jury convicted Durham of conspiracy to commit bank extortion (Count One) and attempted bank extortion (Count Two), but acquitted him on the charge of use of a firearm in commission of a crime of violence (Count Three). Judge David Coar of this court sentenced Durham to concurrent prison terms of 60 months and 188 months, and the Court of Appeals affirmed Durham's convictions and sentence. *United States v. Durham*, 645 F.3d 883, 900 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1537 (2012). Last year, this court denied post-conviction relief to one of Durham's co-defendants. *U.S. v. Callion*, No. 12 C 7288, 2014 WL 2118651 (N.D. Ill. May 21, 2014) *appeal denied* (7th Cir. Sep. 15, 2014). Durham has now filed his *pro se* motion [1] pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his conviction and sentence. Durham argues that trial counsel was ineffective in failing to call a victim of the extortion scheme as a witness, failing to object to firearm discharge enhancements during sentencing, and failing to raise a claim of "actual innocence" with regard to Count One. He also contends that his Fifth and Sixth Amendment rights were violated in various other ways at trial and sentencing. For the reasons stated below, Durham's petition is denied.

**BACKGROUND**

The following facts are drawn from the Seventh Circuit's opinion affirming Petitioner's conviction and sentence.

I.  **FACTUAL BACKGROUND**

In June 2008, Tony Callion proposed to Daniel Gibbs that they kidnap Callion's first cousin, Charles Zachary. Callion planned to seek a $75,000 ransom to cover a drug debt that Callion claimed Zachary owed him. The kidnapping discussions continued at a Fourth of July barbecue at the home of Petitioner Hal Durham (Gibbs's father). Durham and Gibbs's girlfriend, Natalie Hoisington, also participated in these discussions. At some point during the conversations, Callion directed Gibbs to buy handcuffs and duct tape.

On July 9, 2008, Callion called Gibbs and arranged for the kidnapping to proceed that night. Callion, Gibbs, Hoisington, and Durham met at Durham's house around 9:30 p.m. Around midnight or 1:00 a.m., defendants Israel Collins and Sherman Swopes joined Gibbs, Hoisington, and Callion as they left Durham's house, headed for Zachary's house. Zachary was away from home when they arrived, but when he returned, Swopes and Callion abducted him, handcuffed him, and forced him into their vehicle. The group then headed back to Durham's house. As he exited the vehicle, Gibbs, who was carrying a shotgun, accidentally fired the gun into the center console of the vehicle.

Defendants proceeded to torture, threaten, and intimidate Zachary while holding him at Durham's house. The group bound their victim to a chair with duct tape and wrapped the tape around Zachary's head to cover his eyes. At one point, according to Gibbs's testimony at trial, Durham engaged Zachary in a game of "Russian Roulette" with an unloaded .22 caliber revolver, hit Zachary in the head with the revolver, and fired a loaded gun at Zachary's leg. Defendants demanded ransom money, and Zachary told them that he might be able get the money from his girlfriend, Luella Dorenzo, who worked at TCF Bank. With Gibbs's assistance, Zachary placed multiple calls to Dorenzo from his cell phone, but she did not answer. Zachary

2

suggested that two other individuals, "Nellie" or "Bob," might also be able to supply the ransom money. Between 6:00 and 7:00 a.m. on July 10, while Zachary continued his efforts to reach Dorenzo by phone, Durham and Callion left and drove from Durham's house to get money from Nellie. They were unable to obtain the money and did not return to Durham's house until roughly 11:00 a.m.

At 7:34 a.m., while Callion and Durham were away, Zachary finally reached Dorenzo, who agreed to get money from the bank. Gibbs informed Callion by cell phone that Dorenzo had agreed to provide the ransom, and Callion told Gibbs where Dorenzo should drop off the cash. In a later phone call, however, Dorenzo told someone using Zachary's cell phone that it would be difficult for her to simply walk out of the bank with the money. By this time, law enforcement officers were involved, recording the calls between Zachary's and Dorenzo's cell phones.

As of 11:00 a.m., when Callion and Durham returned to Durham's home, Dorenzo still had not secured the ransom money. At Callion's direction, Gibbs told Dorenzo that they "weren't playing no more" and that she needed to provide the money by 12:30 p.m. Soon after Gibbs made that call, Dorenzo left the bank with a TCF-labeled bag containing $40,220.00 (provided by TCF), including four bait bills and a tracking device.

Durham retrieved the money from Dorenzo (the appellate opinion does not say where) and brought it back to his home, where he began dividing the money. While doing so, Durham discovered the tracking device. He initially threw it into a neighbor's yard but then told Hoisington to retrieve the device and get rid of it. As Hoisington stepped outside, officers waiting outside Durham's home apprehended her. Soon after, the officers arrested the other defendants.

In a post-arrest interview, Durham admitted to knowing that Zachary was being held in his house, that ransom calls were being made to Zachary's girlfriend, that Zachary's girlfriend

3

worked at the TCF Bank, and that the ransom amount had reached $40,000. Durham also admitted to picking up the ransom money and attempting to dispose of the tracking device.

On July 11, 2008, the court appointed Anthony Schuman from the Federal Defender Panel to represent Durham. A year later, however, after Judge Coar had set a trial date, Durham moved *pro* se for substitution of counsel, asserting irreconcilable differences with his attorney. Judge Coar granted that motion, but warned Durham that the Constitution does not require the court to continue appointing substitute counsel until Durham found one who agreed with him. *United States v. Durham*, No. 08-CR-549-5, Tr. of Proceedings [324], 5:8–11, July 6, 2009. Durham was unsatisfied with his second appointed lawyer, Robert Korenkiewicz, as well, however, particularly with counsel's decision not to call the kidnapping victim as a defense witness at trial. *United States v. Durham*, No. 08-CR-549-5, Tr. of Proceedings [328], 3:23–4:11, July 29, 2009. Judge Coar reiterated that "we're not going to go through the list of lawyers on the Federal Defenders panel until we find somebody who agrees with [Durham]." *Id.* at 5:6–8. Nevertheless, two months later, again prior to trial, Korenkiewicz sought leave to withdraw because of a "serious personality conflict" with Durham. *United States v. Durham*, No. 08-CR-549-5, Tr. of Proceedings [326], 2:13, Sept. 9, 2009. Judge Coar granted the motion and appointed attorney Steven Shobat to represent Durham. *Id.* at 13:7–11.

At trial, Shobat subpoenaed Zachary and Dorenzo, both of whom came to the courthouse on October 26, 2009. *United States v. Durham*, No. 08-CR-549-5, Trial Tr. vol. 6 [335], 785:22–786:1, Oct. 26, 2009. Shobat interviewed Zachary and Dorenzo during a lunch break and decided against putting either of them on the stand. *Id.* at 788:3–11. Shobat stated for the record that he had conferred with Durham about his decision, and acknowledged that Durham wanted counsel to call Zachary and Dorenzo as witnesses. He nevertheless concluded that calling either Zachary or Durham would not be in Durham's best interests, and released them from the subpoena. *Id.* at 788:12–17.

## II.   PROCEDURAL HISTORY

The grand jury indictment charged Durham and his five co-defendants with conspiracy to commit bank extortion (Count One), attempted bank extortion (Count Two), and knowing use and discharge of firearms during and in relation to a crime of violence (Count Three). Gibbs and Hoisington pleaded guilty to all three Counts and became cooperating witnesses. Swopes and Collins pleaded guilty to Counts Two and Three. Durham and Callion pleaded not guilty and proceeded to trial on October 19, 2009.

On October 28, a jury returned a verdict convicting Durham on Counts One and Two, and acquitting him as to Count Three. The Presentence Investigation Report ("PSR") calculated Durham's criminal history as Category III and his adjusted offense level as Level 34, resulting in an advisory sentencing guideline range of 188 to 235 months in prison. *United States v. Durham*, No. 08-CR-549-5, Def.'s Objections to PSR [256], hereinafter "Def.'s Objections," 1. Durham objected to two sentencing enhancements applied in the calculation of his advisory guideline range: He objected to an enhancement for bodily injury to the victim under U.S.S.G. § 2B3.2(b)(4) because, he argued, the bank—and not Zachary—was the victim of the attempted bank extortion and the conspiracy to commit bank extortion. *Id.* at 1–2. And he objected to the enhancement for use of a firearm during commission of the crime, § 2B3.2(b)(3)(A)(i), arguing that the government had failed to prove that he had used a firearm or that a codefendant's use of a firearm was foreseeable to him, and that the enhancement was improper because the jury had acquitted Durham of the firearm charge. *Id.* at 2. At sentencing on February 1, 2010, Judge Coar overruled both objections. *United States v. Durham*, No. 08-CR-549-5, Sentencing Hr'g Tr. [343], hereinafter "Sentencing Hr'g Tr.," 13:24–15:23. He concluded that, under a proper reading of the guidelines, Zachary should be considered a victim of the crime, and he found by a preponderance of the evidence that Durham had used a firearm during the Russian Roulette game and that Gibbs's accidental discharge of a firearm was foreseeable to Durham under the circumstances. *Id.* Judge Coar stated that while he would be inclined to sentence

Durham at the high end of the guideline range given the severity of the offense, he would nevertheless sentence him at the low end because of Durham's comparatively advanced age and other mitigating circumstances. *Id.* at 57:12–58:6. Judge Coar imposed concurrent prison sentences of 60 months for Count One and 188 months for Count Two. *Id.* at 55:17–21.

At the sentencing hearing, Assistant U.S. Attorney Halley Guren read into the record a victim statement prepared by Zachary. Zachary's statement asserted that the kidnapping episode had made Zachary's life "harder than it ever was from the role [Durham] and his gang of outlaws played." Zachary's statement pointed out Durham could have prevented that harm by refusing to let the co-defendants into his house, by removing Zachary's handcuffs, or by calling the police. *Id.* at 43:11–44:2.

Durham appealed his convictions and sentence, arguing that the government did not present sufficient evidence to support the jury's verdict on Counts One and Two. *Durham*, 645 F.3d at 891, 893. Durham also challenged the application of the sentencing enhancement for causing bodily injury to the victim, repeating the objection he made to the district court—that Zachary was not the "victim" of the crime at issue. *Id.* at 894. The Seventh Circuit rejected these arguments and, on June 28, 2011, affirmed Durham's convictions and sentence. *Id.* at 900. Durham's petition for a writ of certiorari was denied on February 21, 2012. *Durham v. United States*, 132 S. Ct. 1537 (2012).

Durham filed this *pro se* petition on November 15, 2012, pursuant to 28 U.S.C. § 2255. (Pet'r's Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [1] 1.) The government concedes that the petition is timely. *See* 28 U.S.C. § 2255 (f)(1) (requiring prisoner to file writ of habeas corpus within one year of "the date on which the judgment of conviction becomes final").

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a prisoner sentenced in violation of the Constitution or laws of the United States "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a); *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012). A petition for relief under § 2255 requests an extraordinary remedy, essentially asking the district court to "reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). In reviewing such a petition, the district court need not conduct an evidentiary hearing and may dismiss the petition without a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*

Durham styles his petition as a claim based on ineffective assistance of counsel. In making that argument, however, Durham also appears to attack his sentence on other grounds—namely, that Durham is actually innocent; that a variance between the charges in the indictment and the facts presented at trial violated his right to a fair trial; that the admission of hearsay statements violated the Confrontation Clause; and that the district court erred in using the preponderance of evidence standard to determine that Durham had discharged a firearm, thus improperly enhancing Durham's sentence. The court addresses the ineffective assistance of counsel claim before considering these additional arguments.

**I. Ineffective Assistance of Counsel**

Durham's petition asserts that his counsel provided ineffective assistance in three ways: first, counsel failed to call the victim of the bank extortion, Charles Zachary, to testify; second, counsel failed to object to the sentencing enhancements for the use or discharge of a firearm under the Federal Sentencing Guidelines on the basis that the jury had already acquitted Durham of Count Three; and third, counsel failed to raise a claim of "actual innocence" with regard to Count One.

The Sixth Amendment provides criminal defendants with the right to assistance of counsel. U.S. Const. amend. VI. Inherent in this right is defendants' entitlement to *effective* assistance. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). In considering a claim of ineffective assistance, the court looks to the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on such a claim, the defendant must first show that counsel's performance was deficient. *Id.* This can be established by showing that the assistance provided fell below an objective standard of reasonableness. *Id.* at 688. Second, the defendant must establish that counsel's performance prejudiced his defense, meaning that the errors were so serious as to deny the defendant a fair trial. *Id.* at 687. Put another way, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Failure to show either deficient performance or sufficient prejudice dooms an ineffective assistance of counsel claim. *Id.* When considering an ineffective assistance claim, counsel is entitled to a strong presumption that his performance "fell 'within the wide range of reasonable professional assistance' and will not be judged with the benefit of hindsight." *Almonacid*, 476 F.3d at 521 (quoting *Strickland*, 466 U.S. at 689); *see Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010) ("It is well established that our scrutiny of counsel's trial strategy is to be deferential and that we do not second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient.").

### A. Failure to Call Victim to Testify

First, Durham contends that he received ineffective assistance when counsel failed to "seek or explore the possibility of calling Charles Zachary, the victim of the kidnapping, to testify at trial" regarding Durham's involvement and overall culpability. (Mem. in Supp. of Movant's 28 U.S.C. § 2255 Pet. [3], hereinafter "Pet'r's Mem.," 4.) Durham asserts that counsel did not interview, depose, or make Zachary available for testimony. (*Id.*) Counsel repeatedly denied Durham's request to call Zachary as a witness to testify, Durham claims. (Pet'r's Reply to

Government's Resp. to Movant's 28 U.S.C. § 2255 Mot. [6], hereinafter "Pet'r's Reply," 3.) Had counsel called Zachary to testify, Durham maintains, Zachary's testimony would have established that Durham lacked the intent required for a conspiracy conviction. (Pet'r's Mem. at 5.)

To prove that counsel's failure to investigate amounts to ineffective assistance, the movant must identify the information counsel would have discovered in a proper investigation, as well as the evidence that would then be introduced at trial. *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997). The movant must also demonstrate a reasonable probability that the introduction of that evidence would produce a different outcome at trial. *Id.* at 1041–42. In circumstances where a favorable witness is not called to testify, the movant has the burden of supplying the court with "sufficiently precise information" to determine whether prejudice occurred. *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987).

None of these tests is met here. First, contrary to Durham's assertions, counsel *did* subpoena and interview Zachary and Dorenzo. After doing so, counsel advised Durham and the court that, based on his interactions with Zachary and Dorenzo during the trial's lunch break, counsel did not believe their testimony would be in Durham's best interests. True, Durham made clear that he wanted Zachary to testify. But his petition offers only the vague complaint that counsel's failure to call Zachary, the kidnapping victim, as a witness "exposed Movant to the government[']s rendition of events . . . ." (Pet'r's Mem. at 4.) He provides no information, let alone "sufficiently precise information" about what Zachary would say or about how Zachary's testimony could have bolstered any defense to the charges. Zachary's victim statement at Durham's sentencing hearing is powerful evidence in support of counsel's strategic decision against calling him as a witness: In that statement, Zachary blamed Durham for making Zachary's life "harder than it [had ever been]." Sentencing Hr'g Tr., at 43:12–14. Trial counsel's strategy was apparent and was consistent with the intentions of Durham's two previous attorneys: he declined to call Zachary to the stand in order to keep the jury from hearing

9

additional, unfavorable testimony about Durham. At a minimum, that decision was well within the wide range of reasonable professional assistance. Durham's claim of ineffective assistance is denied.

### B. Failure to Object to Enhancement for Firearm Discharge

Second, Durham claims that counsel failed to object to the sentencing guideline enhancement for the discharge of a firearm. *See* United States Sentencing Commission, Guidelines Manual § 2B3.2(b)(3)(A)(i) (increasing offense by seven levels if firearm discharged). As discussed in greater detail below, Durham argues that Judge Coar impermissibly applied the firearm enhancement after the jury had already acquitted Durham of knowingly using and carrying firearms during a crime of violence. Durham contends, as well, that counsel's failure to object to the court's enhancement for the discharge of a firearm amounted to ineffective assistance.

This argument is flatly inconsistent with the record. Durham's counsel did challenge the application of the firearm enhancements. In addition to filing a sentencing memorandum, in which he urged the court to sentence Durham to a term of imprisonment below the advisory guideline range, counsel filed separate objections to the calculation of the guideline range itself. Def.'s Objections at 1. Counsel specifically objected to the firearm enhancement, arguing that the government had not proven that Durham used a firearm or that it was foreseeable that a firearm would be used by a codefendant in commission of the crime, and that applying such enhancements after the jury had acquitted Durham of the firearm charge would violate due process. *Id.* at 2, 7–10. Though the court ultimately rejected counsel's arguments, there is no basis for the claim that counsel failed to make the objection.

### C. Failure to Claim Actual Innocence

Durham also contends that counsel was ineffective in failing to make a claim of "actual innocence" with regard to Count One, conspiracy to commit bank extortion. Specifically, Durham appears to argue that he lacked the necessary knowledge of the conspiracy to warrant

10

a conviction, and his counsel's failure to argue this point in Durham's objection to the presentence investigation report amounted to ineffective assistance. (Pet'r's Mot. at 12.) By that point, however, the jury had already convicted Durham of Count One after counsel had argued strenuously *at trial* for Durham's "actual innocence." An objection to a presentence investigation report, following a jury's guilty verdict, would not be the forum for an "actual innocence" claim. In any event, counsel did argue in his sentencing memorandum that Durham lacked the motive or interest to commit the offense and that the court should consider that in imposing a sentence. *United States v. Durham*, No. 08-CR-549-5, Def.'s Sentencing Mem. [257] 7. Durham's claim that counsel was ineffective for failing to argue for Durham's actual innocence has no merit.

## II. Additional Arguments

In contending that his counsel was ineffective, Durham also appears to advance additional constitutional grounds for relief. The court addresses these arguments in turn.

### A. Actual Innocence

In arguing that counsel was ineffective for not raising an "actual innocence" claim, Durham also attempts to raise his own claim of "actual innocence" as a ground for relief under § 2255. (Pet'r's Mem. at 10 (citing *Schlup v. Delo*, 513 U.S. 298 (1995)).) In doing so, he argues that he did not knowingly engage in the conspiracy to commit bank fraud and that Gibbs's trial testimony to the contrary was not credible. (*Id.* at 11.) A claim of innocence, however, does not provide a free-standing constitutional basis for habeas relief. *Schlup*, 513 U.S. at 315. A successful innocence claim merely allows a court to consider the merits of an otherwise procedurally-barred claim. *Id.* Moreover, a successful claim of actual innocence must be supported by "new reliable evidence" that was not presented at trial, *id.* at 324, and Durham provides no such evidence here. He simply asserts that the verdict the jury reached was incorrect. Petitioner, therefore, has not made a showing of actual innocence, and even if he had made such a showing, it would not provide a basis for relief. *See United States ex rel.*

*Barrow v. McAdory*, No. 01 C 9152, 2003 WL 22282520, at *5 (N.D. Ill. Sept. 29, 2003) ("[C]laims of actual innocence are not stand-alone claims cognizable on federal habeas review.").

**B.     Variance**

Durham also suggests that he was denied a fair trial because of a purported variance between the indictment and the proof offered at trial. The Court of Appeals made no mention of such an argument on direct appeal. Assuming the claim is not procedurally defaulted, it fails on its merits. Durham cites *United States v. Marshall*, 985 F.2d 901, 907 (7th Cir. 1993), in which the Court of Appeals explained that a successful variance claim requires a showing that the facts presented by the government at trial vary from the facts stated in the indictment. If that variance affects the substantial rights of the parties, the defendant's conviction must be reversed. *Id.* at 106. In *Marshall*, the defendants argued that while the indictment charged a conspiracy to sell powder cocaine in two cities, the facts at trial showed that there were two separate conspiracies: one to sell powder cocaine in one city and one to distribute crack cocaine in the other. *Id.* at 907. The court held, however, that because the defendants participated in both conspiracies, any variance that existed was harmless. *Id.* Here, Durham does not make any showing of a variance between the indictment and the proof at trial, let alone a variance that was prejudicial. He instead argues that there was a variance between the indictment and "the actual crime." (Pet'r's Mem. at 5.) That is, he repeats his claim that he was actually innocent of the charges made in the indictment and that Zachary's testimony would have shown that he "had no ideal[sic] of such conspiracy." (*Id.*) For the reasons discussed above, Durham's actual innocence claim fails. Absent any identified variance between the indictment and the proof at trial, let alone a prejudicial variance, this claim fails as well.

**C.     Confrontation**

Durham also appears to make two separate claims for relief under the Confrontation Clause. Both claims, if not defaulted, also fail on the merits. The Sixth Amendment's

Confrontation Clause "bars the admission of 'testimonial hearsay' against a criminal defendant unless (1) the declarant is unavailable at trial; and (2) the defendant had a prior opportunity to cross-examine the declarant." *Jones v. Basinger*, 635 F.3d 1030, 1041 (7th Cir. 2011) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). As Durham sees things, his counsel's decision not to call Zachary to testify violated the Confrontation Clause. (Pet'r's Mem. at 4.) But, as explained earlier, Durham was not denied the opportunity to call Zachary to testify; rather, counsel made a strategic decision not to do so. More importantly, no "testimonial hearsay" statement from Zachary was admitted at trial. As the government notes, Zachary's statements were admitted only as context for statements made by Durham's co-conspirators, not for the truth of those statements. (Government's Resp. to Def.'s Mot. to Vacate, Set Aside or Correct Conviction and Sentence [4] 6.) Durham has failed to show that any testimonial hearsay statements of Zachary were admitted in violation of the Confrontation Clause.

Durham also objects to the admission of Gibbs's purported "double-hearsay" testimony as a violation of Durham's rights under the Confrontation Clause. To the extent that Durham objects to the admission of statements made by Gibbs himself, this argument fails because Gibbs did testify at trial, and Durham had the opportunity to cross-examine him. In addition, though Durham does not specify which part of Gibbs's testimony was hearsay or "double-hearsay," Judge Coar admitted Gibbs's statements and his testimony about his co-conspirators' statements, following the government's *Santiago* proffer, as nonhearsay statements of co-conspirators. *United States v. Durham*, No. 08-CR-549-5, Minute Entry [188], Oct. 22, 2009. The Seventh Circuit has held that *Crawford* does not apply to statements of co-conspirators. *United States v. Jenkins*, 419 F.3d 614, 618 (7th Cir. 2005). As Durham has not explained how Judge Coar was incorrect in admitting Gibbs's testimony about the other defendants' statements as nonhearsay statements of co-conspirators, his Confrontation Clause claim regarding Gibbs's testimony cannot succeed.

### D. Firearm Sentencing Enhancement

Durham also again directly challenges Judge Coar's application of the enhancement for use of a firearm in the commission of the crime. That enhancement was improper, Durham argues, because the jury had already acquitted him of the firearm count. (Pet'r's Mem. at 8–10, 12.) At the time Durham submitted his petition, his claim—that the jury's acquittal on the firearm charge foreclosed the judge's contrary preponderance-of-evidence determination—was a misstatement of the law and a misstatement of the Fourth Circuit's holding in *United States v. Alleyne*, 457 F. App'x 348 (4th Cir. 2011), which Durham cites. (Pet'r's Mem. at 12.) *Harris v. United States*, 536 U.S. 545 (2002) had held that a judge could find facts by a preponderance of evidence, regardless of a jury's finding under a reasonable doubt standard, even if those facts increased a defendant's sentence. Subsequent to Durham's petition, however, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), and held that any finding of fact that "alters the legally prescribed punishment so as to aggravate it . . . must be submitted to the jury [to determine based on a reasonable doubt standard]." *Alleyne v. United States*, 133 S. Ct. 2151, 2162 (2013). For two reasons, however, the Supreme Court's holding in *Alleyne* does not apply to Durham's case. First, *Alleyne* does not apply retroactively to sentences, like this one, imposed prior to the Court's decision. *Crayton v. United States*, No. 13 C 3548, 2015 WL 3895767, at *1 (7th Cir. June 25, 2015). Second, *Alleyne* does not require that facts that merely alter an advisory guideline range, as opposed to the mandatory statutory minimum, be found by a jury. *See United States v. Volpendesto*, 746 F.3d 273, 296 n.8 (7th Cir. 2014). In determining the appropriate advisory guideline range for sentencing Durham, Judge Coar was free to conclude that the preponderance of evidence showed that Durham had used a firearm and that Gibbs's use of a firearm during the commission of the crime was foreseeable.

## **CONCLUSION**

For the foregoing reasons, Durham's petition for relief pursuant to 28 U.S.C. § 2255 [1] is dismissed. The court concludes that "no jurist[] of reason" would find this court's conclusions debatable, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and therefore declines to issue a certificate of appealability.

ENTER:

Dated: September 14, 2015

REBECCA R. PALLMEYER
United States District Judge